Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANA RIOS LAGUNAS, on behalf of herself and the Class members;<br><br>　　　　*Plaintiff,*<br><br>vs.<br><br>YOUNG ADULT INSTITUTE, INC.; and DOES 1–100, inclusive.<br><br>　　　　*Defendants.* | Case No. 3:23-cv-00654-RS<br><br>Assigned to the Honorable Richard Seeborg<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　　March 7, 2024<br>Time:　　　　1:30 p.m.<br>Crtrm.:　　　3, 17th Floor<br><br>Complaint Filed:　February 14, 2023<br>Trial Date:　　　None Set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on March 7, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Richard Seeborg of the United States District Court for the Northern District of California, Plaintiff Joana Rios Lagunas, on behalf of herself and all others similarly situated ("Plaintiff"), will and hereby does move the Court for preliminary approval of the Class Action and PAGA[1] Settlement Agreement and Release ("Settlement Agreement" or "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell). The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiff moves for an order:

(1)    Granting preliminary approval of the Settlement Agreement as to the Settlement Class and approving the Settlement Agreement as to the alleged Aggrieved Employees;

(2)    Conditionally certifying the proposed Settlement Class for settlement purposes;

(3)    Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Class Counsel for the Settlement Class;

(4)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(5)    Preliminarily appointing and approving Plaintiff Joana Rios Lagunas as Class Representative for the Settlement Class;

(6)    Preliminarily appointing and approving Phoenix Class Action Administration Solutions as the Settlement Administrator for the Settlement Class and alleged Aggrieved Employees;

(7)    Approving the Settlement Notice (attached as **Exhibit A** to the Settlement Agreement);

(8)    Authorizing the Settlement Administrator to mail the approved Settlement Notice to the Class Members and alleged Aggrieved Employees as set forth in the Settlement Agreement;

(9)    Setting a final approval and fairness hearing; and

(10)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement:

---

[1] "PAGA" means the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.*

| Event | Deadline |
|---|---|
| Date of preliminary approval | March 7, 2024 |
| Deadline for Defendant to provide Administrator with Class List (Settlement, ¶ 18(d)). | Within ten (10) business days after the Court's preliminary approval of the Settlement. |
| Deadline for Administrator to mail Settlement Notice to Class Members (Settlement, ¶ 18(f)). | Within ten (10) business days after receiving the Class List. |
| Notice Deadline (Settlement, ¶ 2(y)). | Sixty (60) days after the Settlement Notice is initially mailed to the Class Members and Aggrieved Employees. |
| Deadline to opt out of or object to Settlement or dispute workweeks (Settlement, ¶¶ 2(y), 19–21). | Sixty (60) days after the Settlement Notice is initially mailed to the Class. |
| Deadline for Administrator to provide counsel a report showing: (i) the number of Class Members who have timely requested exclusion; (ii) the number of Class Members who have submitted invalid exclusion requests; (iii) copies of all exclusion requests (whether valid or invalid); (iv) the estimated average and median recovery per Class Member who has not submitted a valid letter requesting exclusion; (v) the estimated average and median recovery per Aggrieved Employee; and (vi) the largest and smallest estimated amounts to be paid to Class Members who have not submitted valid letters requesting exclusion. (Settlement, ¶ 19(h)). | Within ten (10) business days after the Notice Deadline. |
| Deadline for filing and uploading onto settlement website Motion for Attorneys' Fees and Costs, and for Service Award | No later than fifteen (15) days before the Notice Deadline |
| Deadline for filing of Final Approval Motion | To be set by Court should preliminary approval be granted: _____ |
| Final Approval Hearing (Settlement, ¶ 23). | No earlier than thirty (30) days after the Notice Deadline. |
| Effective Date (Settlement, ¶ 2(m)). | (i) If there is an objection to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection and appeal, then after such appeal is dismissed or the Court's Final |

| Event | Deadline |
|-------|----------|
| | Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement. |
| Deadline for Defendant to deposit Gross Settlement Amount (Settlement, ¶ 25). | Within ten (10) days of Effective Date. |
| Deadline for Administrator to make all payments due under the Settlement (Settlement, ¶¶ 26, 36). | Within twenty (20) days after the Effective Date or as soon as reasonably practicable. |
| Deadline for Administrator to provide Defendants' Counsel and Class Counsel, respectively, a report regarding the total amount of any funds that remain from checks that are returned as undeliverable or are not negotiated (Settlement, ¶¶ 18(k), 24). | Within ten (10) business days after conclusion of the 180-day check-cashing period. |
| Deadline for Administrator to provide written certification of completion of settlement administration (Settlement, ¶ 18(k)). | Upon completion of administration of the Settlement. |

Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e) and Cal. Lab. Code Section 2699(l)(2). The Motion is based on this notice and the following Memorandum of Points and Authorities, the accompanying Declaration of Carolyn Hunt Cottrell, all other records, pleadings, and papers on file in this action, and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of Class Action and PAGA Settlement with her moving papers.

Date: February 2, 2024                    Respectfully Submitted,


                                          /s/ Carolyn H. Cottrell
                                          Carolyn Hunt Cottrell
                                          Ori Edelstein
                                          **SCHNEIDER WALLACE**
                                          **COTTRELL KONECKY LLP**

                                          *Attorneys for Plaintiff and the Putative Class*

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ........................................................................................................ 1

    A.   Initial Pleadings. ............................................................................................ 1

    B.   Pre-Mediation Discovery, Mediation, and Settlement. ............................... 2

    C.   Factual Background. ...................................................................................... 3

III. TERMS OF THE SETTLEMENT .............................................................................. 4

    A.   Basic Terms and Value of the Settlement ..................................................... 4

    B.   Class and Aggrieved Employee Definitions ................................................. 5

    C.   Allocation and Awards .................................................................................. 5

    D.   Scope of Release ........................................................................................... 7

    E.   Settlement Administration ............................................................................ 7

IV.  ARGUMENT .............................................................................................................. 8

    A.   The Court Should Grant Preliminary Approval of the Settlement. ............... 8

    B.   The Court Should Certify the Settlement Class. ........................................... 8

        1.   The Putative Class Members are numerous and ascertainable. ......................9

        2.   Plaintiff's claims raise common issues of fact or law .....................................9

        3.   Plaintiff's claims are typical of the claims of the Class .................................10

        4.   Plaintiff and Class Counsel will adequately represent the Class. .................10

        5.   The Rule 23(b)(3) requirements for class certification are also met. ...........11

    C.   The Settlement Should Be Preliminarily Approved Because it is Fair, Reasonable, and Adequate. ......................................................................... 12

        1.   The terms of the Settlement are fair, reasonable, and adequate. ..................13

        2.   The Parties' discovery enabled them to make informed decisions regarding settlement. ......................................................................................15

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION AND PAGA SETTLEMENT; MPA IN SUPPORT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*

3.    Litigating the Action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk. ...........................16

4.    The Settlement is the product of informed, non-collusive, and arm's length negotiations between experienced counsel. ...........................18

D.    The Settlement Also Provides a Fair and Reasonable Resolution for the State of California and the Aggrieved Employees. ................................. 18

E.    The Service Award to Representative Plaintiff is Reasonable. ........................... 20

F.    The Requested Attorneys' Fees and Costs are Reasonable. .................................. 21

G.    The Proposed Settlement Notice is Reasonable. .................................................. 22

V.    CONCLUSION ............................................................................................................... 24

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*,
   2018 U.S. Dist. LEXIS 20460, 2018 WL 746393 (E.D. Cal. 2018)................................ 19

*Amaral v. Cintas*,
   163 Cal.App.4th 1157 (2008) ........................................................................... 17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................................................... 12

*Balderas v. Massage Envy Franchising, LLP*,
   2014 WL 3610945 (N.D. Cal. July 21, 2014) ................................................... 13

*Benton v. Telecom Network Specialists, Inc.*,
   220 Cal.App.4th 701 (2014) ............................................................................. 11

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ................................................................... 15

*Carter v. Anderson Merch., LP*,
   2010 WL 1946784 (C.D. Cal. May 11, 2010)................................................... 18

*Caudle v. Sprint/United Mgmt. Co.*,
   2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) .................................................. 9

*Churchill Village, LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)....................................................................... 13, 23

*Cotter v. Lyft, Inc.*,
   176 F.Supp.3d 930 (N.D. Cal. Apr. 7, 2016).................................................... 19

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).......................................................................................... 22

*Estrada v. Royalty Carpet Mills, Inc.*,
   No. S274340, 2024 Cal. LEXIS 123 (Jan. 18, 2024) ...................................... 20

*Franco v. Ruiz Food Prods., Inc.*,
   2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 (E.D. Cal. 2012).......................... 19

*Fry v. Hayt, Hayt & Landau*,
   198 F.R.D. 461 (E.D. Pa. 2000) .................................................................. 9, 10

iii

MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*

*Garcia v. Gordon Trucking*,
2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 (E.D. Cal. 2012) .......................................... 19

*Gonzales v. CoreCivic of Tennessee, LLC*,
2018 WL 4388425 (E.D. Cal. Sept. 13, 2018) ................................................................. 20

*Greer v. Dick's Sporting Goods, Inc.*,
No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923
(E.D. Cal. Sep. 15, 2020) ................................................................................... 21

*Guilbaud v. Sprint/United Mgmt. Co., Inc.*,
No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) ................................... 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... passim

*Haralson v. U.S. Aviation Servs. Corp.*,
383 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................................... 19

*Hartley v. On My Own, Inc.*,
2020 U.S. Dist. LEXIS 154315, 2020 WL 5017608
(E.D. Cal. Aug. 25, 2020) ................................................................................... 19

*Ikonen v. Hartz Mountain Corp.*,
122 F.R.D. 258 (S.D. Cal. 1988)............................................................................ 9

*In re Activision Sec. Litig.*,
723 F.Supp. 1373 (N.D. Cal. 1989) ....................................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................... 13, 19

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........................................................................... 13

*Jordan v. NCI Grp., Inc.*,
EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297
(C.D. Cal. Jan. 5, 2018) ................................................................................... 18

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009) ....................................................................... 22

*Lewis v. Starbucks Corp.*,
2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .......................................................... 16

*Lusk v. Five Guys Enters. LLC*,
   No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812
   (E.D. Cal. Jan. 22, 2022)................................................................................................ 13

*Lynn's Food Stores v. United States Dept. of Labor*,
   679 F.2d 1350 (11 Cir. 1982) ...................................................................................... 12

*Ma v. Covidien Holding, Inc.*,
   SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296
   (C.D. Cal. Jan. 31, 2014) .............................................................................................. 13

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) .................................................................................. 16

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
   No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268
   (N.D. Cal. May 5, 2021) ................................................................................................ 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)....................................................................................................... 23

*Noyes v. Kelly Servs., Inc.*,
   2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) ............................................................... 22

*O'Connor v. Uber Techs., Inc.*,
   201 F.Supp.3d 1110 (N.D. Cal. 2016).......................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................... 12, 13, 15

*Otey v. Crowdflower, Inc.*,
   Case No. 12-cv-05524-JST, 2015 WL 6091741
   (N.D. Cal., Oct. 16, 2015)............................................................................................. 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)....................................................................................................... 22

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ...................................................................................... 22

*Ramirez v. Benito Valley Farms, LLC*,
   Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272
   (N.D. Cal. Aug. 25, 2017)............................................................................................. 18

*Regino Primitivo Gomez v. H&R Gunlund Ranches, Inc.*,
2011 WL 5884224 (E.D. Cal. 2011) ................................................................................. 21

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) ........................................................................................ 9

*Schiller v. David's Bridal, Inc.*,
2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012) ............................................................... 19

*Shaw v. AMN Healthcare, Inc.*,
326 F.R.D. 247 (N.D. Cal. 2018) ........................................................................................ 9

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ............................................................................................. 23

*Smith v. Lux Retail N. Am., Inc.*,
No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562
(N.D. Cal. June 13, 2013) ................................................................................................. 14

*Smith v. Rae Venter Law Grp.*,
29 Cal.4th 345 (2002) ....................................................................................................... 17

*Soto v. O.C. Commc'ns, Inc.*,
Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) ........................... 20, 21

*Spann v. J.C. Penney Corp.*,
211 F.Supp.3d 1244 (C.D. Cal. 2016) ............................................................................... 21

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................................ 20, 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671
(N.D. Cal. June 17, 2015) ................................................................................................. 13

*Van Liew v. North Star Emergency Servs., Inc.*,
No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018) ........................................... 20

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................... 20

*Vasquez v. Coast Valley Roofing*,
266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................................... 21

*Viceral v. Mistras Grp., Inc.*,
   2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................................................... 13

*Villafan v. Broadspectrum Downstream Servs.*,
   No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS 249763 ................................................ 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 21

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ................................................................................... 9, 11

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331
   (E.D. Cal. Aug. 21, 2019) ............................................................................................ 21

*Woehrle v. AMN Servs., LLC*,
   Los Angeles Superior Court, Case No. 19STCV15213 ................................................. 9

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................................................... 13, 18, 21

*Yokoyama v. Midland Nat'l. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ..................................................................................... 11

## **STATUTES**

Cal. Lab. Code § 203 ............................................................................................................ 17

Cal. Lab. Code § 2699(e)(2) ................................................................................................. 20

Cal. Lab. Code §§ 2698, *et seq.* ............................................................................................. 1

Fed. R. Civ. P. 23 .................................................................................................................... 9

Fed. R. Civ. P. 23(a) ............................................................................................................... 8

Fed. R. Civ. P. 23(a)(1) ........................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ........................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ......................................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 10

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 8, 9, 11

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 23

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 8, 12

Fed. R. Civ. P. 30(b)(6) ............................................................................................... 16

**TREATISES**

Conte, Newberg on Class Actions (3rd Ed. 1992) ....................................................... 23

Manual for Complex Litigation (4th ed. 2004) ........................................................ 8, 23

Posner, Economic Analysis of the Law (4th ed. 1992) ................................................ 22

**REGULATIONS**

8 C.C.R. 13520 ............................................................................................................ 17

MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Joana Rios Lagunas, on behalf of herself and all others similarly situated ("Plaintiff"), seeks preliminary approval of the class-wide settlement reached with Defendant Young Adult Institute, Inc. ("Defendant"). After almost a year of litigation, including extensive informal discovery, a full-day mediation, and arm's length negotiations between counsel, the Parties have reached a global settlement of this action, memorialized in the proposed Class Action and PAGA Settlement Agreement and Release.[2]

This class and PAGA[3] representative action alleges violations of California wage and hour laws, resulting in the alleged underpayment of wages and the alleged failure to provide reimbursements and compliant meal and rest periods to hundreds of non-exempt hourly Class Members and Aggrieved Employees employed by Defendant in California during the periods of February 14, 2019 to December 23, 2023 as to the Class and January 29, 2022 to December 23, 2023 as to Aggrieved Employees.

The Settlement resolves approximately 299 Class Members' claims, as well as the representative PAGA claims, for a total non-reversionary settlement of $850,000.00. The Settlement provides significant average individual recoveries of approximately $1,714.60 per Class Member. With this Settlement, the Parties are resolving numerous wage-and-hour claims unlikely to have been prosecuted as individual actions. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II. BACKGROUND

### A. Initial Pleadings.

Plaintiff filed her initial Class Action Complaint on February 14, 2023 in this Court, alleging violations under California wage and hour laws on behalf of a putative California class against Young Adult Institute, Inc. ECF 1. On April 4, 2023, Plaintiff filed her PAGA Action in Alameda County

---

[2] The "Settlement" or "Settlement Agreement", attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Cottrell Decl.")
[3] "PAGA" means the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.*

1  Superior Court, alleging claims against Defendant on behalf of herself, the State of California, and

2  Aggrieved Employees (the "PAGA Action"). Cottrell Decl., ¶ 9.

3  Pursuant to the Parties' agreement, Plaintiff will file a First Amended Complaint, which will

4  consolidate the claims asserted on behalf of the Class in the Class Action and the PAGA claims asserted

5  in the PAGA Action, as well as add claims for failure to maintain accurate payroll records and failure

6  to provide sick pay. *Id.*, ¶ 15.

7  **B.    Pre-Mediation Discovery, Mediation, and Settlement.**

8  Following the Parties' agreement to participate in early mediation of this matter, the Parties

9  engaged in informal discovery, through which Defendant produced hundreds of pages of documents,

10  including all time and pay records for the Class, handbooks and written policies, Plaintiff's personnel

11  file, and Defendant's financials. Cottrell Decl., ¶ 11. Documents produced by Defendant prior to

12  mediation included time-punch records (*i.e.,* clock-in and clock-out times), payroll information,

13  timekeeping, compensation, and meal and rest break policies applicable to hourly, non-exempt

14  employees, as well as Defendant's financial documents. *Id.*

15  On September 1, 2023, the Parties participated in a full-day mediation before Steve Pearl, a

16  highly skilled mediator with years of experience in wage-and-hour actions. *Id.*, ¶ 14. The case did not

17  settle that day, but the Parties subsequently agreed to the mediator's proposal, which included the

18  substantive terms of the Settlement, on September 11, 2023. *Id.* The Parties thereafter negotiated the

19  specific terms of the Settlement at arm's length and executed a long-form agreement (the

20  "Settlement"), subject to the Court's approval, on January 18, 2024. *Id.*, ¶ 15.

21  Plaintiff's Counsel has made a thorough and independent investigation of the facts and law

22  relating to the allegations in the Action. Cottrell Decl., ¶ 12. In agreeing to the Settlement, Plaintiff

23  has considered: (a) the facts developed during pre-mediation informal discovery and the Parties'

24  mediation process and the law applicable thereto; (b) the attendant risks of continued litigation and

25  the uncertainty of the outcome of the claims alleged against Defendant; (c) the desirability of

26  consummating the Settlement according to its terms; and (d) Defendant's financial condition and

27  ability to pay a settlement. *Id.* Documents produced by Defendant prior to mediation included time-

28  punch records (*i.e.,* clock-in and clock-out times), payroll information, timekeeping, compensation,

and meal and rest break policies applicable to hourly, non-exempt employees, as well as Defendant's financial documents. *Id.*, ¶ 11. Plaintiff's counsel extensively reviewed this information and documents to perform a detailed investigation of Defendant's timekeeping and payroll policies and practices, which included a comprehensive damages analysis. *Id.*, ¶ 13. Based on the information analyzed, Plaintiff and Class Counsel have concluded that the terms of the Settlement are fair, reasonable and adequate, and that the Settlement is in the best interests of Plaintiff, the Class Members, and the Aggrieved Employees to resolve their claims against Defendant. *Id.*

### C.    Factual Background.

Defendant owns and operates facilities that specialize in serving people with intellectual and developmental disabilities throughout the State of California. ECF 1 ("Complaint"), ¶ 13. Plaintiff was employed by Defendant as a Lead Registered Behavioral Technician from November 30, 2021 to December 26, 2022, in Hollister, California. *Id.*, ¶ 14.

Defendant employs hourly, non-exempt employees like Plaintiff and other Class Members, who share common job duties and are subject to the same handbooks, which include Defendant's written policies. *See id.*, ¶¶ 17-19. Plaintiff contends that Defendant requires its employees to work 10 or more hours per day, but does not pay overtime for working more than 8 hours in a day, as required by California law. *Id.*, ¶¶ 20, 77. Instead, Defendant pays its employees at overtime rates only when they work over 40 hours in a week. *Id.*

Plaintiff further alleges that Defendant fails to properly pay Plaintiff and Class Members for all hours worked, including all minimum wages and overtime because Defendant routinely requires Plaintiff and Class members to perform work off-the-clock and without compensation. *Id.*, ¶ 21. Defendant requires Plaintiff and Class Members to perform certain tasks, that when taken together, amount to more time than is allotted during each scheduled shift. Plaintiff and Class Members often have to finish work-related tasks, debrief staff members, and wrap up conversations with patient while off-the-clock. *Id.* Moreover, Plaintiff and Class Members are required to attend weekly meetings of approximately one to one and one-half hours each, while off-the-clock. *Id.* Plaintiff and Class Members also performed the following duties while off-the-clock, for example, responding to patient crises, providing assistance to patients, and calling 911 or emergency services in emergency situations.

*Id.* Because this time spent working off-the-clock occurs during shifts when Plaintiff and Class members are working over eight hours, it should be paid at the overtime rate. *Id.*

In addition, Plaintiff alleges that Defendant regularly fails to provide Class Members with compliant meal and rest breaks, and fails to provide its employees with the required premium payments for these noncompliant meal and rest breaks (*i.e.*, a full 1 hour of pay at the regular rate). *Id.*, ¶ 22-26. Plaintiff alleges that up until December of 2022, Defendant maintained a policy requiring Plaintiff and Class Members to remain on the clock during their purported meal breaks and continue working. Id., ¶, 22. Even after the change to this policy Defendant still requires Plaintiff and Class Members to routinely skip their meal and rest periods, take them late, or cut them short, yet do not provide them with requisite premium payments for missed meal and rest periods. *Id.*, ¶ 23. Defendant requires Plaintiff and Class Members to clock out for 30-minute meal periods but requires her and the other employees to remain on-duty and subject to interruption during those periods. *Id.*, ¶ 21. During these interruptions, Class Members respond to emergencies and assist patients and/or answer questions regarding patients, without compensation. *Id.*

Plaintiff alleges that Defendant also fails to provide Plaintiff and the Class Members reimbursement for expenses incurred by Plaintiff and the Class Members in direct consequence of the discharge of their duties, or as a result of their obedience to the directions of Defendant, including purchasing goods for clients when Defendant's had run out, without reimbursement. *See id.*, ¶ 29. Defendant denies all of the allegations in the Complaints and PAGA letter.

## III.    TERMS OF THE SETTLEMENT

### A.    Basic Terms and Value of the Settlement

Defendant has agreed to pay a non-reversionary Gross Settlement Amount of $850,000.00 to settle all aspects of the case. Settlement, ¶ 2(r). The Net Settlement Amount is defined as the Gross Settlement Amount, less deductions for: Service Award to Plaintiff (not to exceed $10,000.00), attorneys' fees to Class Counsel (not to exceed 33 1/3%, or $283,333.33) Class Counsel's costs (not to exceed $12,000.00), administrative expenses to the Settlement Administrator (estimated not to exceed $12,000.00), the LWDA PAGA Payment for its 75% share of the PAGA penalties ($15,000.00), and the Net PAGA Amount distributed to the Aggrieved Employees ($5,000.00). After deducting these

figures from the $850,000.00 Gross Settlement Amount, the Net Settlement Amount to be paid to participating Class Members – *i.e.*, Class Members who do not exclude themselves from the Settlement – is currently estimated to be approximately $512,616.67.Cottrell Decl., ¶ 17; Settlement, ¶¶ 2(x), (gg), (w), (n), (g), (ii), (u), (w). Defendant has also agreed to pay the employer's portion of payroll taxes on the wage portion of Settlement Awards to Participating Individuals. Settlement, ¶ 2(r). For each individual Settlement Award that is provided from the Net Settlement Amount, 25% of each Settlement Award shall be allocated as wages, and 75% of each Settlement Award shall be allocated as penalties and interest. *Id.*, ¶ 33.

### B.    Class and Aggrieved Employee Definitions

The Class is defined as all current and former hourly, non-exempt employees who worked for Defendant in the state of California any time between February 14, 2019 and the earlier of the date of Preliminary Approval or December 23, 2023. *Id.*, ¶ 2(c). There are approximately 299 putative Class Members. Cottrell Decl., ¶ 18. The Aggrieved Employees include all non-exempt employees for Defendant in California between January 29, 2022 and the earlier of the date of Preliminary Approval or December 23, 2023. Settlement, ¶ 2(b).

### C.    Allocation and Awards

The Net Settlement Amount to be paid to Participating Class Members – *i.e.*, Class Members who do not exclude themselves from the Settlement – is currently estimated to be approximately $512,666.67. Cottrell Decl., ¶ 17. Participating Class Members will receive a Settlement Award check without the need to submit a claim form. *See* Settlement, ¶¶ 29, 30. Participating Class Members shall be eligible to receive a share of the Net Settlement Amount based on their *pro rata* percentage of workweeks worked in California between February 14, 2019 and the earlier of the date of Preliminary Approval or December 23, 2023. *Id.*, ¶ 30(a)(ii). Aggrieved Employees shall be eligible to receive a share of the Net PAGA Amount based on their *pro rata* percentage of pay periods worked in California between January 29, 2022 and the earlier of the date of Preliminary Approval or December 23, 2023 ¶ 30(b)(i).

The Settlement Administrator will mail all Settlement Awards and Individual PAGA Payments to Participating Class Members and/or Aggrieved Employees within twenty (20) days after the

Effective Date[4] or as soon as reasonably practicable. *Id.*, ¶ 36. Settlement Award checks will remain valid for 180 days from the date of their issuance, and the face of each check will prominently display the date on which the check will be voided. *Id.*, ¶ 38. The Settlement Administrator will cancel any check not cashed within that time, and will promptly send a replacement check to any Participating Class Member whose original check was lost or misplaced, if requested by the Participating Class Member prior to the void date. *Id.*, ¶ 38. Ninety days into the 180-day check-cashing period, the Settlement Administrator will also send a reminder letter (attached as **Exhibit B** to the Settlement) via U.S. mail to those who have not yet cashed their Settlement Award or Individual PAGA Payment check. *Id.*

For any funds that remain from checks that are returned as undeliverable or are not negotiated after the 180-day check cashing period, those monies shall be distributed, subject to the Court's approval, as follows:

(a) If the total residual amount is less than $25,000.00, the amount will revert to *cy pres*. The Parties propose Centro Legal de La Raza which provides free legal representation to the Latino community and other low-income immigrant families.

(b) If the total residual amount is $25,000.00 or greater, a second distribution will occur to those Participating Class Members and/or Aggrieved Employees who cashed their Settlement Award check, which will occur on the same pro rata basis as the initial distribution. The additional settlement administration costs related to the redistribution will be deducted from the total amount of uncashed checks prior to the redistribution. If a check to a Participating Class Members and/or Aggrieved Employees is returned to the Settlement Administrator as undeliverable during the second distribution, the Settlement Administrator shall attempt to obtain a valid mailing address by performing a skip trace search and, if another address is identified, shall mail the check to the newly identified

---

[4] "Effective Date" means (i) if there is an objection to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection and appeal, then after such appeal is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement.

1  address. If none is found, the check will revert to *cy pres*. If there are uncashed check

2  funds remaining from redistribution as described in this Paragraph, then the amount will

3  revert to cy pres.

4  *Id.*, ¶ 39.

5  ### D.    Scope of Release

6  Upon Final Approval by the Court, and subject to the exclusions described below, each

7  Participating Class Member will fully release all claims that were raised in the Action and all claims

8  that could have been brought based on the facts alleged in the Complaints, between February 14, 2019

9  and the earlier of the date of Preliminary Approval or December 23, 2023. Settlement, ¶ 15(a).

10  Aggrieved Employees will also be deemed to have released PAGA claims that were or could have

11  been brought based on the facts alleged in the Complaints or PAGA letter, between January 29, 2022

12  and the earlier of the date of Preliminary Approval or December 23, 2023. *Id.*, ¶ 15(b). Plaintiff has

13  also agreed to a general release from all known and unknown claims she may have against the Released

14  Parties,[5] through the earlier of the date of Preliminary Approval or December 23, 2023. *Id.*, ¶ 17.

15  ### E.    Settlement Administration

16  The Parties have agreed to use Phoenix Class Action Administration Solutions ("Phoenix") to

17  administer the Settlement, whose costs shall be paid from the Gross Settlement Amount. *Id.*, ¶¶ 2(hh),

18  2(ii), 26(d)); Cottrell Decl. ¶ 19. Phoenix will distribute the Settlement Notices to Class Members via

19  U.S. mail, re-mail any Settlement Notices returned as undeliverable but with forwarding addresses,

20  and re-mail the Settlement Notice to any new address obtained by way of skip-tracing or other search

21  methods. Settlement, ¶¶ 18(f), (g). Phoenix will receive and process disputes regarding workweeks,

22  objections, and requests for exclusion. *Id.*, ¶¶ 19–21. Phoenix will calculate Settlement payments,

23  calculate applicable payroll taxes, withholdings, and deductions, and issue disbursements to Class

24  Members, the Service Award to Plaintiff, payment to the LWDA and the Aggrieved Employees,

25  payment to Class Counsel for fees and costs, and payment to itself. *Id.*, ¶ 26. Phoenix will also

26  calculate, file, and remit all required tax returns to appropriate taxing and other governmental

27  authorities, all amounts to be deducted or paid on account of the Settlement Class Member Allocation

28

---

[5] "Released Parties" is defined in the Settlement at ¶ 2(dd).

1  Amounts, including the employee's share of wage withholdings. *Id.* The Settlement Administrator will

2  further set up a toll-free number and a dedicated website for any settlement inquiries. *Id.,* ¶ 18(c).

3  **IV.  ARGUMENT**

4      **A.  The Court Should Grant Preliminary Approval of the Settlement.**

5      A class action may only be settled with court approval. *See* Fed. R. Civ. P. 23(e). Court

6  approval of a class-action settlement requires three steps: (1) preliminary approval of the proposed

7  settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

8  and (3) a final settlement approval hearing at which objecting class members may be heard, and at

9  which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement

10  is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action*

11  *Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is

12  committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

13  (9th Cir. 1998) ("*Hanlon*"). Rule 23 requires that all class-action settlements satisfy two primary

14  prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the

15  settlement class meets the requirements for class certification if it has not yet been certified; and (2)

16  that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, *supra*, at

17  1020. Defendant does not oppose certification of the Class for settlement purposes, only, and agrees

18  to seek this Court's approval thereon. *See* Settlement, ¶¶ 11, 19, 24. As discussed below, this class-

19  action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and

20  adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminarily approve the

21  Settlement.

22      **B.  The Court Should Certify the Settlement Class.**

23      A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all

24  members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the

25  claims or defenses of the class representative are typical of the claims or defenses of the class; and (4)

26  the person representing the class is able to fairly and adequately protect the interests of all members

27  of the class. *See* Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking

28  monetary relief may only be maintained if "the court finds that the questions of law or fact common

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3). Applying this standard, numerous cases like this case have certified classes of employees who have allegedly suffered wage-and-hour violations under California wage-and-hour laws.[6]

### 1.   The Putative Class Members are numerous and ascertainable.

The numerosity requirement demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts routinely find numerosity satisfied with classes of at least 40 members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Here, there are approximately 299 Class Members who are readily identified from Defendant's payroll records, thereby rendering the class so large as to make joinder impracticable. Cottrell Decl., ¶ 20.

### 2.   Plaintiff's claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000) ("*Fry*"). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) ("*Wang*"). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying Rule 23(a)(2) and (b)(3). Defendant has uniform policies applicable to all Class Members. Specifically, Defendant's uniform policies that apply to all non-exempt employees, include: Defendant's policy of not paying Class Members overtime premiums for working more than 8 hours per day and for requiring Class Members to attend weekly meetings and perform work while off-the-clock before and after shifts, Defendant's policy of requiring employees to use common time recording devices, Defendant's policy, until

---

[6] *See, e.g., Woehrle v. AMN Servs., LLC,* Los Angeles Superior Court, Case No. 19STCV15213 (approving a settlement class of healthcare professionals who worked in California for dismissed Defendant AMN Services, LLC and alleged policy-driven wage violations); *Caudle v. Sprint/United Mgmt. Co.,* 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying California Rule 23 class in a case asserting policy-driven off-the-clock, overtime, and meal and rest break violations).

December 2022, of requiring Class Members to remain on the clock and continue working during meal periods, and Defendant's alleged policies that still require Plaintiff and Class Members to routinely skip their meal and rest periods, take them late, or cut them short. Cottrell Decl., ¶ 21.

In addition, the wage and hour violations create common issues of law that are amenable to resolution on a class-wide basis. These issues include: whether Defendant's practice of failing to pay Class Members for time worked over 8 hours in a day at the proper overtime rate, and failure to pay premium payments at the regular hourly rate for non-compliant meal and rest periods violate California law. *Id*.

Plaintiff's derivative claims will rise or fall with the primary claims. *Id*. Because these questions can all be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for the Class. *Id*.

### 3. Plaintiff's claims are typical of the claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff claims are typical of those of all other Class Members. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. Defendant's overtime policies and practices and review of timekeeping and payroll data further confirm that Plaintiff and other Class Members were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. Cottrell Decl., ¶ 22. Thus, the typicality requirement is also satisfied.

### 4. Plaintiff and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, *supra*, at 469. Plaintiff's claims are in line with the claims of the Settlement Class, and Plaintiff's claims are not antagonistic to the claims of Class Members. Cottrell Decl., ¶ 23. Plaintiff has prosecuted this case with the interests of

the Class Members in mind. *Id*. Moreover, Class Counsel has extensive experience in class-action and employment litigation, including wage-and-hour class actions, and does not have any conflict with the Settlement Class. *Id.* at ¶¶ 5-7, 23.

**5.    The Rule 23(b)(3) requirements for class certification are also met.**

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, the common questions raised in this action predominate over any individualized questions concerning the Class Members. Cottrell Decl., ¶ 24. Resolution of the claims hinges on the uniform policies and practices of Defendant, rather than the treatment the Class Members experienced on an individual level. *Id*. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendant's uniform policies, and would not require inquiries specific to individual class members.[7] *Id*.

Further, the class-action mechanism is a superior method of adjudication compared to a multitude of individual suits. *Id*., ¶ 25. To determine whether the class approach is superior, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, the Class Members do not have a strong interest in controlling their individual claims.

---

[7] Although the amount of time worked off-the-clock may vary, that is a damages issue and should not impact class certification. *Yokoyama v. Midland Nat'l. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine the amount of time each individual employee spent changing into isolation suits, for example, despite Defendant's allegedly unlawful policy, is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (2014).

The Action involves hundreds of workers with very similar, but relatively small, claims for monetary injury. If the Class Members were to proceed on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Settlement Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. Thus, Plaintiff contends that the class-action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability is not a concern in the settlement context. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the Settlement Class for settlement purposes.

### C.    The Settlement Should Be Preliminarily Approved Because it is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("*Officers for Justice*"); *Lynn's Food Stores v. United States Dept. of Labor*, 679 F.2d 1350 at 1354-55 (11 Cir. 1982); *Otey v. Crowdflower, Inc.*, Case No. 12-cv-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal., Oct. 16, 2015). Before making such a finding, the Court must consider whether (1) class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; and (3) the relief provided for the class is adequate in light of: (a) the costs, risks, and delay of trial; (b) the effectiveness of any proposed method of distributing relief to the class; (c) the terms of any proposed award of attorney's fees; and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-

00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness, where, as here, "the settlement is recommended by class counsel after arm's length bargaining." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ("*Wren*"). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Considering these factors, the proposed Settlement is fair, reasonable, and adequate.

### 1.    The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage-and-hour settlement which represented 8.1% of the total verdict value).[8] A review of the Settlement shows the fairness, reasonableness, and adequacy of its terms.

Here, the Gross Settlement Amount of $850,000.00 represents approximately 31% of the $2,715,817.00 total that Plaintiff calculated for core claims for unpaid meal and rest premiums, unpaid overtime wages, and unreimbursed business expenses. Cottrell Decl., ¶ 27. When adding the calculated

---

[8] *See also Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296, at *12 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

1    derivative penalties, this settlement amount represents approximately 14.2% of Defendant's total

2    potential exposure of $6,006,623.00. *Id*, ¶ 28.

3    Plaintiff's counsel based their exposure analysis and settlement negotiations on the informal

4    discovery produced, including payroll and timekeeping data, as well as review of relevant documents

5    and policies. *Id*., ¶ 29. Based on this information, Plaintiff made reasonable assumptions regarding the

6    wage-and-hour violation rates, including that Class Members worked an average of 4 hours off-the-

7    clock each week, which includes one to one and a half hours spent per week attending meetings while

8    off the clock, as well as work performed before clocking in and after clocking out of shifts and while

9    off-the-clock during meal periods. *Id*. The analysis also found noncompliant meal periods 73% of the

10    time, and that Class Members were subject to noncompliant rest periods 85% of the time. *Id*. Plaintiff

11    also calculated that the 299 Class Members worked approximately 9,972 work weeks during the

12    relevant time period, at an average hourly rate of $27.05. *Id*.

13    Using these assumptions and other datapoints derived from the timekeeping and payroll

14    information, and further assuming that Plaintiff and Class Members would certify all of their claims

15    and prevail at trial, Plaintiff's Counsel calculated the total substantive potential exposure if Plaintiff

16    prevailed on all of her claims of approximately $2,715,817.00 and the total exposure of $6,006,623.00.

17    *Id*., ¶ 30. This total exposure is further broken down as follows: approximately $548,415.00 for unpaid

18    meal break premiums; approximately $904,295.00 for unpaid rest break premiums; approximately

19    $1,200,783.00 for unpaid off-the-clock work at the overtime rate; approximately $62,324.00 for

20    unpaid business expenses; approximately $452,613.00 for failure to provide accurate wage statements;

21    approximately $795,375.00 for waiting time penalties; and approximately $2,042,818.00 for PAGA

22    penalties.[9] *Id*., ¶ 31. The derivative and PAGA claims – totaling approximately $3,290,806.00 – are

23    premised on, and rise and fall with, the substantive violations. *Id*., ¶ 32.

24    These figures are based on Plaintiff's assessment of a best-case-scenario. To obtain such a

---

[9] Given that courts decline to "stack" PAGA penalties for single substantive violations, Plaintiff assumed 1 PAGA violation per pay period, per PAGA Employee for purposes if its analysis. *See Smith v. Lux Retail N. Am., Inc*., No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013) ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate []. Another is for denying employees minimum wage and overtime []. But is it plausible that we would really pile one penalty on another for a single substantive wrong?").

result at trial, Plaintiff would have to, at the minimum: (1) certify all claims and withstand any decertification motions; (2) prove that each Class Member worked off-the-clock attending unpaid meetings, before and after shifts, and during meal and rest breaks; (3) prove that each Class Member did not receive overtime premium payment pursuant to California law; (4) prevail on the merits on all claims; (5) prove that Defendant acted knowingly or in bad faith; and (6) prove that all Class Members experienced the violations at the levels described above for every shift. *Id.*, ¶ 33.

The Gross Settlement Amount is a negotiated amount that resulted after substantial arm's length negotiations following a full-day mediation session with a well-respected mediator, and significant investigation and analysis by Plaintiff's counsel. *Id.*, ¶ 34. Plaintiff and her counsel considered the significant risks of continued litigation when considering the proposed Settlement. *Id.* These risks were front and center, particularly given the nature of the off-the-clock work, that the Class Members work in separate facilities throughout California, which could invariably complicate certification efforts and proving the claims on the merits. *Id.* In contrast, the Settlement will result in immediate and certain payment to Class Members of meaningful amounts. *Id.*

The average recovery is approximately $1,714.60 per Settlement Class Member.[10] *Id.*, ¶ 35. This amount provides significant compensation to the Class Members, and the Settlement provides an excellent recovery in the face of expanding and uncertain litigation. *Id.* The final settlement amount considers the substantial risks inherent in any class-action wage-and-hour case, as well as the procedural posture of the Action and the specific defenses asserted by Defendant, many of which are unique to this case. *Id.*; *see Officers for Justice*, 688 F.2d at 623. In light of all of the risks, the settlement amount is fair, reasonable, and adequate. *Id.*

### 2. The Parties' discovery enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v.*

---

[10] This amount divides the Net Settlement Amount of approximately $512,666.67 by total number of 299 putative Class Members. The averages provided here assume all Class Members participate in the Settlement and worked identical lengths of employment.

*Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties here engaged in extensive discovery that has enabled both sides to assess the claims and potential defenses in this action, including extensive review of all time and pay records for the Class, handbooks and written policies, Plaintiff's personnel file, and Defendant's financial documents. Cottrell Decl., ¶¶ 11, 36. This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id*., ¶ 36. In addition, in reaching this Settlement, Plaintiff's Counsel relied on their substantial litigation experience in similar wage-and-hour class actions. *Id*., ¶ 37. Plaintiff's Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's policies and practices on Class Members' pay. *Id*. Ultimately, facilitated by mediator Steve Pearl, the Parties used this information and discovery to fairly resolve the litigation. *Id*.

### 3. Litigating the Action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation, especially given Defendant's non-profit structure and that the financial documents produced show that the company suffered losses over the last few years. *Id*., ¶ 38. If the Action were to go to trial as a class action, the fees and costs would certainly exceed the fees and costs requested here. *Id*., ¶ 39 Litigating the class action claims would require substantial additional preparation and discovery. *Id*. Plaintiff would need to complete fact and expert discovery. This would include: (1) written discovery to and depositions of Class Members; (2) depositions of Defendant's 30(b)(6) witnesses, managers, and executives; (3) third party discovery to Defendant's timekeeping and payroll custodians of records, and (4) expert discovery. Finally, Plaintiff would need to prepare for trial, which would require the presentation of percipient and expert witnesses, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id*.

Even if Plaintiff successfully overcame these procedural obstacles, recovery of the damages

and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendant has asserted to defend this action. *Id.*, ¶ 40. Off-the-clock claims may pose difficulty to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker, which can be a considerable hurdle here, where Class Members carried many different job titles and worked at different facilities throughout California. Plaintiff would face fundamental logistical difficulties in reviewing and analyzing the massive amounts records to provide evidence that Defendant, indeed, failed to pay Class Members wages for all worked hours during that time period. *Id.*

In addition, certification of off-the-clock work claims is complicated by a similar lack of documentary evidence and reliance on employee testimony. *Id.*, ¶ 41. While Plaintiff is confident that she would establish that common policies and practices give rise to the overtime violations and off-the-clock work for Class Members, Plaintiff faces the risk that the Court would decline to certify the Settlement Class altogether, or for at least some claims. *Id.* As to Plaintiff's PAGA claims, Plaintiff would first need to overcome similar procedural hurdles, including completing substantial amounts of written discovery and depositions. *See id.,* ¶ 42.

Plaintiff would further likely need to move for and defend against motions for summary judgment or adjudication, and would be further required to take their claims to trial. *Id.,* ¶ 43. Trials are inherently risky for all parties. Although Plaintiff believes that she could have been successful in proving these claims, and that Defendant's evidence would not have been as persuasive, a trial on the off-the-clock claims and meal and rest periods would have carried a high degree of risk.[11] *Id.*

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

---

[11] For example, on the California derivative claims, Defendant would argue that no penalties for waiting-time violations can be awarded unless the failure to pay wages is "willful," an element that Plaintiff acknowledge given Defendant's policies and enforcement would have been difficult to prove. *See* Cal. Lab. Code § 203; 8 C.C.R. 13520 ("[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages were due."); *Smith v. Rae Venter Law Grp.*, 29 Cal.4th 345, 354 n.2 (2002) (holding that a good faith dispute that any wages are due will preclude an award of waiting time penalties). Defendant would also have argued that an employer's failure to pay wages is not willful unless it reached the standard of "gross negligence or recklessness." *See Amaral v. Cintas*, 163 Cal.App.4th 1157, 1201 (2008).

prompt, certain, and very substantial recovery for the Class Members. *Id*., ¶ 44. Such a result will benefit the Parties and the court system. *Id*. It will bring finality to the Action and will foreclose the possibility of expanding litigation. *Id*.

### 4. The Settlement is the product of informed, non-collusive, and arm's length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, *supra*, at *10; *Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the Settlement was a product of non-collusive, arm's length negotiations. Cottrell Decl., ¶¶ 16, 34. The Parties participated in a lengthy mediation session before Steve Pearl, a skilled mediator with many years of experience mediating employment matters. *Id*., ¶ 14. The Parties then spent many months discussing settlement and negotiating the Settlement Agreement, with several rounds of edits related to the final details of the Settlement. *Id*., ¶ 15. Plaintiff is represented by experienced and respected class-action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id*., ¶ 45.

### D. The Settlement Also Provides a Fair and Reasonable Resolution for the State of California and the Aggrieved Employees.

Not only does the Settlement serve as a deterrent to future violations, but the result achieved is well within the range of reasonableness based on the underlying facts and the risks faced by Plaintiff in proving these claims. "Courts have recognized that PAGA settlements must be viewed in light of PAGA's public purpose, namely augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance with California's labor laws.[12]

---

[12] *See, e.g., Ramirez v. Benito Valley Farms, LLC*, Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25, 2017); *see also Jordan v. NCI Grp., Inc*., EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297 at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.").

1    "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the

2    most important factor to consider is plaintiffs' expected recovery balanced against the value of the

3    settlement offer." *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1120-21 (N.D. Cal. 2016)

4    (citing *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. Apr. 7, 2016)). A court's focus is thus

5    not the amount employees ultimately receive as a result of a settlement, but on whether the settlement

6    achieves PAGA's objectives, even if it represents only a portion of an employer's total exposure.

7        The PAGA Amount of $20,000.00 represents 2.3% of the Gross Settlement Amount, well

8    within the PAGA settlements previously approved in this district and other California district courts.[13]

9    As is the case here, a settlement that represents only a fraction of the potential recovery is still

10   reasonable. *See*, *e.g.*, *In re Mego Fin. Corp.*, 213 F.3d at 459 ("'It is well-settled law that a cash

11   settlement amounting to only a fraction of the potential recovery does not per se render the settlement

12   inadequate or unfair.'") (citation omitted)). This District is generally cautious about PAGA settlements

13   representing less than 1% of the total value of a PAGA claim, but not regarding PAGA settlements

14   representing 1% or more of the total value of a PAGA claim. *Haralson v. U.S. Aviation Servs. Corp.*,

15   383 F. Supp. 3d 959, 972-73 (N.D. Cal. 2019) (collecting cases discussing settlements of less than 1%

16   of the total value of a PAGA claim); *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-

17   07087-DMR, 2021 U.S. Dist. LEXIS 87268, at *25 n.3 (N.D. Cal. May 5, 2021) (noting the PAGA

18   portion of a proposed settlement representing 2.4% of total exposure under the PAGA exceeded the

19   1% benchmark "and therefore does not invoke the additional concerns examined in *Haralson*"). The

20   reasoning for this approach is multifaceted; however, one of the major concerns regarding PAGA

21   settlements is that PAGA penalties may be reduced at a court's discretion. "A trial court's discretion

22   to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps

23   even significantly, in reaching a settlement. However, before the court could exercise that discretion

24   ─────────────────────────

[13] *See, Hartley v. On My Own, Inc.*, 2020 U.S. Dist. LEXIS 154315, 2020 WL 5017608, * 4 (E.D. Cal.

25   Aug. 25, 2020) (approving settlement at 3.47% of verdict value of PAGA penalty, resulting in average payment per employee of $61); *Ahmed v. Beverly Health & Rehab. Servs., Inc*., 2018 U.S. Dist. LEXIS

26   20460, 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); *Schiller v. David's Bridal, Inc*., 2012 U.S. Dist. LEXIS 80776, at *35-36 (E.D. Cal. 2012)

27   (approving PAGA settlement of $7,500 or 0.14% of the total settlement); *Franco v. Ruiz Food Prods., Inc*., 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement

28   of $10,000, or 0.4% of total settlement); *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*

it would have to know the actual estimated values of the PAGA claims." *Gonzales v. CoreCivic of Tennessee, LLC,* 2018 WL 4388425, at *6-9 (E.D. Cal. Sept. 13, 2018). The Court could, and likely would, exercise its discretion pursuant to Cal. Lab. Code § 2699(e)(2) to award an amount less than the maximum civil penalty amount based on the facts and circumstances of the case.

Here, if the case were to proceed to judgment, multiple factors could lead the Court to award a lower penalty, including that Defendant contends that Aggrieved Employees were paid hundreds of premium payments during the claims period, and that not all Aggrieved Employees were subject to the same policies. Plaintiff faces risks in proving her claims in this manner, including showing that trial can move forward without violating any due process concerns, as suggested in the California Supreme Court's recent decision in *Estrada v. Royalty Carpet Mills, Inc.,* No. S274340, 2024 Cal. LEXIS 123, at *42 (Jan. 18, 2024). In light of these risks discussed in this Motion and in the supporting Cottrell Decl., and under an analysis of similar PAGA settlements, $20,000.00 constitutes a material percentage of the total damage exposure and is a reasonable overall settlement sum.

**E.    The Service Award to Representative Plaintiff is Reasonable.**

Named plaintiffs in class-action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[14]  The service payment not to exceed $10,000.00 for Plaintiff is intended to compensate her for the critical role she played in this case, including but not limited to the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. *See* Settlement, ¶ 2(gg); Cottrell Decl., ¶ 46.

Plaintiff's proposed enhancement payment represents only 1% of the Gross Settlement Amount, Cottrell Decl., ¶ 47, well within payments approved in similar cases.[15] In agreeing to serve

---

[14] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

[15] *See, e.g., Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS 249763 at *18 (approving $10,000 service award); *Soto v. O.C. Commc'ns, Inc.,* Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000.00 and $10,000.00 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Mgmt. Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000.00 service payments for each class representative in FLSA and California state law representative wage-and-hour action); *Van Liew v. North Star Emergency Servs., Inc.,* No. RG17876878 (Alameda Co. Super. Ct., Dec. 11, 2018) (approving $15,000.00 and $10,000.00 service awards, respectively, to class representatives in California Labor Code wage and hour class action); *Greer v. Dick's Sporting Goods, Inc.,* No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS

as a Class representative, Plaintiff formally agreed to accept the responsibilities of representing the interests of all Class Members. *Id.* Moreover, Plaintiff agreed to a general release, unlike other Class Members. *Id.*, ¶ 48; Settlement, ¶ 17. Defendant does not oppose the requested payments to the Plaintiff as a reasonable service award. *Id.*, ¶ 49; Settlement, ¶¶ 2(gg), 18(b), 26(a). The proposed service award is fair and reasonable, and should be preliminarily approved.

## F.    The Requested Attorneys' Fees and Costs are Reasonable.

In their fee motion to be submitted in advance of the final approval hearing, Class Counsel will request a percentage of the common fund, up to 33 1/3% of the Gross Settlement Amount, or $283,333.33, plus reimbursement of costs up to $12,000.00. *Id.*, ¶ 26(b); Cottrell Decl., ¶ 50. Plaintiff's counsel will provide their lodestar information with their fee motion, which will demonstrate the reasonableness of Plaintiff's Counsel's rates. Cottrell Decl., ¶¶ 51; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").

In California, federal and state courts routinely approve payments of attorneys' fees amounting to one-third of the common fund in comparable wage-and-hour class actions. *See, e.g., Soto v. O.C. Commc'ns, Inc.*, No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez v. H&R Gunlund Ranches, Inc.*, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund). These awards fall within the typical range of acceptable attorneys' fees in the Ninth Circuit of 20% to 33 1/3% of the total settlement value. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th

---

168923, at *15 (E.D. Cal. Sep. 15, 2020) (approving $10,000 service award representing .003 percent of gross settlement amount in wage and hour settlement where class members were estimated to receive $155 on average); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331, at *32 (E.D. Cal. Aug. 21, 2019) (approving $10,000 service awards each to two class representatives, which amounted to 0.6 percent of the overall settlement amount of $3,400,000); *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1265 (C.D. Cal. 2016) (awarding service award of $10,000, approximately 100 times average the award and less than 0.25 percent of gross settlement).

Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952.[16]

In this case, given the excellent results achieved and the effort expended to achieve it, 33 1/3% is warranted. There was no guarantee of compensation or reimbursement. Cottrell Decl., ¶ 52.  Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendant's defenses confronted Plaintiff's counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiff and her counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class recovery. *Id.* The challenges that Plaintiff's Counsel had to confront and the risks they had to fully absorb on behalf of the Class Members here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

The amount of fees and costs requested are clearly set forth in the Settlement Notice, and Plaintiff's fee motion will be uploaded onto the corresponding website – which is also provided on the Settlement Notice – prior to the close of the notice deadline. *See* Settlement, ¶ 18(c); Ex. A. Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the terms of the Settlement, including the request for fees and costs. Any objections by Class Members to the request for fees and costs may be considered by the Court at final approval. *Id.*

### G.    The Proposed Settlement Notice is Reasonable.

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties

---

[16] The exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377–78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").

of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Settlement Notice, attached as **Exhibit A** to the Settlement Agreement, is "the best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). All Class Members have been identified and the Settlement Notice will be mailed directly to each Settlement Class Member. Settlement, ¶ 18(c). The proposed class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. *Id.*, Ex. A. Pursuant to Rule 23(h), the proposed Notices also set forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notice clearly states that the Settlement does not constitute an admission of liability by Defendant. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.* Accordingly, the Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notices. Before mailing, Defendant will provide Phoenix a database that contains the names, last known addresses, telephone numbers (if any), and social security numbers of each Class Member, along with the applicable number(s) of workweeks for calculating the respective settlement shares. Settlement, ¶¶ 2(h), 18(d). Phoenix will make reasonable efforts to update the contact information in the database using public and private skip tracing methods. *Id.,* ¶¶ 18(g), 39(b). Within ten business days of receipt of the Class List from Defendants, Phoenix will mail the Notices to each Settlement Class Member. *Id.,* ¶ 18(f). With respect to Notices returned as undeliverable, Phoenix will re-mail any Notices returned to it with a forwarding address following receipt of the returned mail. *Id.*, ¶ 18(g).

1    If any Notice is returned to Phoenix without a forwarding address, it will undertake reasonable efforts

2    to search for the correct address, including skip tracing, and will promptly re-mail the Notice to any

3    newly found address. *Id*.

4          Class Members will have 60 days from the initial mailing of the Settlement Notice to dispute

5    workweeks, object to the Settlement, or request exclusion. *Id.*, ¶ 2(y). Because the proposed Settlement

6    Notice clearly and concisely describes the terms of the Settlement and the awards and obligations for

7    Class Members who participate, and because the Notice will be disseminated in a way calculated to

8    provide notice to as many Class Members as possible, the Notice should be preliminarily approved.

9    **V.    CONCLUSION**

10         For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary

11   approval of the Settlement, in accordance with the schedule set forth herein.

12

13   Date: February 2, 2024                    Respectfully Submitted,

14

15                                             */s/ Carolyn H. Cottrell*
                                               Carolyn Hunt Cottrell
16                                             Ori Edelstein
                                               **SCHNEIDER WALLACE**
17                                             **COTTRELL KONECKY LLP**

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*

1

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of California, by using the Court's CM/ECF system on February 2, 2024. Service will be accomplished on all parties by the Court's CM/ECF system.

 */s/ Carolyn H. Cottrell*
Carolyn H. Cottrell

MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
*Rios Lagunas v. Young Adult Institute, Inc., 23-cv-00654-RS*