Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

Laurel N. Holmes (SBN 308515)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S Grand Avenue, Suite 2700
Los Angeles, California 90071
Tel: (213) 835-1550
Fax: (415) 421-7105
lholmes@schneiderwallace.com

*Attorneys for Plaintiff, the State of California*
*on behalf of Aggrieved Employees, and the*
*Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANA RIOS LAGUNAS, on behalf of herself and the Class members;<br><br>*Plaintiff,*<br><br>vs.<br><br>YOUNG ADULT INSTITUTE, INC.; and DOES 1–100, inclusive.<br><br>*Defendants.* | Case No. 23-cv-00654-RS<br><br>Assigned to the Honorable Richard Seeborg<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          September 5, 2024<br>Time:          1:30 p.m.<br>Crtrm.:        3 – 17th Floor<br><br>Complaint Filed:   February 14, 2023<br>Trial Date:           None Set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on September 5, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Richard Seeborg of the United States District Court for the Northern District of California, Plaintiff Joana Rios Lagunas, on behalf of herself and all others similarly situated ("Plaintiff"), will and hereby does move the Court for final approval of the Class Action and PAGA[1] Settlement Agreement and Release ("Settlement"),[2] which the Court preliminarily approved on March 8, 2024. (ECF No. 41). The Settlement resolves all of the claims in this action on a class and representative basis. In particular, Plaintiff moves for an order:

(1) Granting final approval of the Settlement as to the Class[3] and Aggrieved Employees;

(2) Approving the Settlement apportionment;

(3) Finally certifying the Class for settlement purposes;

(4) Finally approving Schneider Wallace Cottrell Konecky LLP ("SWCK") as Class Counsel;

(5) Finally appointing and approving Plaintiff Joana Rios Lagunas as Class Representative;

(6) Finally appointing and approving Phoenix Class Action Administration Solutions ("Phoenix") as the Settlement Administrator and the costs of settlement administration in the amount of $12,000.00; and

(7) Finally approving the proposed implementation schedule set forth herein and in the proposed order submitted herewith.

Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e) and Cal. Lab. Code § 2699(l)(2). The Motion is based on this notice and the following Memorandum of Points and Authorities; the Cottrell Prelim. Decl. (ECF No. 35-1); the Declaration of Kevin Lee (Settlement Administrator, Phoenix Class Action Administration Solutions) ("Lee Decl."); the Declaration of Carolyn H. Cottrell ("Cottrell Final Decl."); all other records, pleadings, and papers on file in this action, and such other evidence or argument as may be presented to the Court at the hearing on this Motion.

---

[1] "PAGA" means the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.*
[2] The Settlement is attached as **Exhibit 1** to the Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Cottrell Prelim. Decl."). (ECF No. 35-1).
[3] Unless otherwise indicated, capitalized terms have the meanings ascribed to the in the Settlement.

1    Plaintiff also submits the Proposed Final Approval Order and Judgment with her moving

2    papers.

3

4    Date: August 15, 2024                    Respectfully Submitted,

5

6                                             */s/ Carolyn H. Cottrell*
                                              Carolyn Hunt Cottrell
7                                             Ori Edelstein
                                              Laurel N. Holmes
8                                             **SCHNEIDER WALLACE**
                                              **COTTRELL KONECKY LLP**

9
                                              *Attorneys for Plaintiff, the State of California on behalf*
10                                            *of Aggrieved Employees, and the Putative Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
*Rios Lagunas v. Young Adult Institute, Inc.*, Case No. 23-cv-00654-RS

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 1

      A.    Notice of Settlement and Response of Class Members .......................................... 2

III.  TERMS OF THE SETTLEMENT ................................................................................ 3

      A.    Basic Terms and Value of the Settlement .............................................................. 3

      B.    Class and Aggrieved Employee Definitions .......................................................... 5

      C.    Allocation and Awards ........................................................................................ 5

      D.    Scope of Release .................................................................................................. 7

IV.   ARGUMENT .............................................................................................................. 7

      A.    Class-Action Settlements are Favored in the Ninth Circuit. .................................. 7

      B.    The Best Practicable Notice was Provided to the Class Members. ......................... 8

      C.    The Settlement Warrants Final Approval. ............................................................. 9

            1.    The Settlement is Entitled to a Presumption of Fairness Because it is
                  the Product of Informed, Non-Collusive, Arm's Length Negotiation. ..........10

            2.    The Class Members Support the Settlement. ................................................10

            3.    The Action Involves Significant Risks from Further Litigation. ..................11

            4.    The Settlement Amount Favors Final Approval. ..........................................12

            5.    The Parties Engaged in Informal Pre-Mediation Discovery, Enabling
                  Them to Make Informed Decisions Regarding Settlement ...........................13

            6.    Class Counsel are Highly Experienced. .......................................................13

      D.    The Court Should Finally Certify the Class. .........................................................14

            1.    The Class is Numerous and Ascertainable. ..................................................14

            2.    Plaintiff's Claims Raise Common Issues of Fact or Law. .............................15

            3.    Plaintiff's Claims are Typical of those of the Class. ...................................16

iv

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
*Rios Lagunas v. Young Adult Institute, Inc.*, Case No. 23-cv-00654-RS

4.    Plaintiff and Class Counsel will Adequately Represent the Class...............16

5.    Rule 23(b)(3)'s Requirements for Class Certification are Met....................16

E.    The Settlement Provides a Fair and Reasonable Resolution for the State of California and the Aggrieved Employees............................................................... 17

F.    The Attorneys' Fees and Costs and Service Award are Reasonable. ................... 18

G.    The Court Should Approve the Proposed Schedule. ............................................ 18

V.    CONCLUSION ............................................................................................................. 19

1

## TABLE OF AUTHORITIES

2

## CASES

3

*Balderas v. Massage Envy Franchising, LLC*,

4
No. 12-cv-06327-NC, 2014 U.S. Dist. LEXIS 99966

5
(N.D. Cal. July 21, 2014).............................................................................. 14

6
*Bell v. Consumer Cellular, Inc.*,
No. 3:15-cv-941-SI, 2017 U.S. Dist. LEXIS 95401

7
(D. Or. June 21, 2017)................................................................................... 15

8
*Boyd v. Bechtel Corp.*,

9
485 F. Supp. 610 (N.D. Cal. 1979) ............................................................... 15

10
*Carter v. Anderson Merchandisers, LP*,

11
No. EDCV 08-0025-VAP OPX, 2010 U.S. Dist. LEXIS 7793
(C.D. Cal. Jan. 27, 2010) .............................................................................. 16

12

13
*Churchill Village, LLC. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).......................................................................... 10

14

15
*Clarkson v. Alaska Airlines Inc.*,
No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 138838

16
(E.D. Wash. Aug. 4, 2020)............................................................................. 19

17
*Class Plaintiffs v. City of Seattle*,

18
955 F.2d 1268 (9th Cir. 1992)......................................................................... 7

19
*Cody v. Hillard*,

20
88 F.Supp.2d 1049 (D.S.D. 2000).................................................................. 11

21
*Doe v. Univ. of Wash.*,
326 F.R.D. 669 (W.D. Wash. 2018) .............................................................. 17

22

23
*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989).......................................................................... 7

24
*Garcia v. Stemilt AG Servs. LLC*,

25
No. 2:20-cv-00254-SMJ, 2021 U.S. Dist. LEXIS 158060
(E.D. Wash. Aug. 20, 2021) .......................................................................... 17

26

27
*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) .............................................................. 18

28

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ............................................................................. 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................ 8, 11, 18, 19

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F.Supp.3d 959 (N.D. Cal. 2019) .............................................................. 21

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*,
   289 F.R.D. 526 (N.D. Cal. 2012) .................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................... 14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................ 10

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),
   654 F.3d 935 (9th Cir. 2011) .......................................................................... 15

*Jordan v. NCI Grp., Inc.*,
   EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297
   (C.D. Cal. Jan. 5, 2018) ................................................................................... 21

*Kilbourne v. Coca-Cola Co.*,
   No. 14CV984-MMA BGS, 2015 U.S. Dist. LEXIS 118756
   (S.D. Cal. July 29, 2015) ................................................................................. 12

*Langford v. Devitt*,
   127 F.R.D. 41 (S.D.N.Y. 1989) ......................................................................... 9

*Mandujano v. Basic Vegetable Prods., Inc.*,
   541 F.2d 832 (9th Cir. 1976) ....................................................................... 9, 11

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ..................................................................... 15

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
   No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268
   (N.D. Cal. May 5, 2021) ................................................................................... 21

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................ 8, 10, 14

*Ramirez v. Benito Valley Farms, LLC*,
  Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272
  (N.D. Cal. Aug. 25, 2017) ........................................................................................ 21

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) .............................................................................. 17

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................... 14

*Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*,
  136 F.R.D. 658 (D. Or. 1991) .................................................................................... 18

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 9

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) .............................................................................. 10

*Viceral v. Mistras Grp., Inc.*,
  No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759
  (N.D. Cal. Oct. 11, 2016) ........................................................................................... 14

*Villafan v. Broadspectrum Downstream Servs.*,
  No. 18-cv-06741-LB, 2020 U.S. Dist. LEXIS 218152
  (N.D. Cal. Nov. 20, 2020) .......................................................................................... 12

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
  319 F.R.D. 307 (D. Or. 2017) .................................................................................... 19

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ............................................................................... 18, 20

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667
  (N.D. Cal. Apr. 1, 2011) ................................................................................. 10, 11, 16

*York v. Starbucks Corp.*,
  No. CV 08-07919 GAF PJWX, 2011 U.S. Dist. LEXIS 155682
  (C.D. Cal. Nov. 23, 2011) .......................................................................................... 12

1

## STATUTES

Fed. R. Civ. P. 23 (a) ................................................................................................ 14

Fed. R. Civ. P. 23 (a)(3) ........................................................................................... 15

Fed. R. Civ. P. 23 (a)(4) ........................................................................................... 16

Fed. R. Civ. P. 23 (b) ............................................................................................... 14

Fed. R. Civ. P. 23 (b)(3) ...................................................................................... 15, 16

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 14

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 14, 15

Fed. R. Civ. P. 23(e) ................................................................................................. 7

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 9

## TREATISES

*Manual for Complex Litigation, Judicial Role in
   Reviewing a Proposed Class Action Settlement* (4th ed.) ............................... 8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.     INTRODUCTION

3

Plaintiff Joana Rios Lagunas achieved an excellent non-reversionary $850,000.00 Class and

4

PAGA Action Settlement on behalf of Defendant's hourly, non-exempt employees. Notice has been

5

disseminated pursuant to the Court's preliminary approval order (ECF No. 41), and the response of

6

the Class Members has been overwhelmingly favorable. Plaintiff now seeks final approval to

7

effectuate the Settlement and bring closure to over 16 months of intensive litigation.

8

The Settlement resolves the claims of 387 Class Members for a non-reversionary Gross

9

Settlement Amount of $850,000.00.[1] This negotiated amount provides substantial recoveries to the

10

Class Members, thereby achieving a favorable result for hundreds of wage-and-hour claims unlikely

11

to have been prosecuted as individual actions. The approximate average gross recovery is an

12

impressive $2,196.38 per Class Member. Even after the deductions from the Gross Settlement Amount

13

as set forth in the Settlement, the approximate average net recovery is $1,324.85 per Class Member,

14

and the highest award to be paid is approximately $4,484.94.[2] (Lee Decl., ¶ 13).

15

These robust recoveries resulted in an overwhelmingly positive response to the Settlement and

16

confirm that the Settlement is fair, reasonable, and adequate in all respects. To date, no Class Member

17

has objected to the Settlement, and only two Class Members (approximately 0.5%) have requested

18

exclusion. Given the positive response of the Class, and that the Settlement will provide significant

19

monetary payments to the affected employees, among other reasons discussed below, Class Counsel

20

respectfully submits that the Court should approve the Settlement.

21

### II.     FACTUAL AND PROCEDURAL BACKGROUND

22

The Court granted preliminary approval of the $850,000.00 non-reversionary Settlement on

23

March 8, 2024. (ECF No. 41). The procedural and factual history of this Action is well-documented

24

in Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Preliminary

25

Approval Motion") (ECF No. 35) and in Plaintiff's Motion for Attorneys' Fees and Costs, and Service

26

---

[1] Plaintiff's initial estimate of the class size of 299 was based on the number used at mediation which

27

was based on Class Members through the date of Mediation. The increase to 387 represents the actual number of Class Members as identified by Defendant by the end of the Class Period. (Cottrell Final Decl., ¶ 13).

28

[2] Declaration of Kevin Lee ("Lee Decl."), ¶ 13.

1    Award ("Fee Motion") (ECF No. 43). For purposes of this motion, Plaintiff focuses on the notice

2    process.

3            **A.    Notice of Settlement and Response of Class Members**

4            Following the Court's preliminary approval order, the Settlement Administrator, Phoenix,

5    received from Defendant the Class List, which contained each Class Member's name, last-known

6    mailing address and email address (if any), last-known telephone number (if any), social security

7    number or tax ID number, the total number of workweeks that each Class Member worked in

8    California during the Class Release Period, and the total number of pay periods that each Aggrieved

9    Employee worked in California during the PAGA Release Period. (*See* Lee Decl., ¶ 2; Settlement,

10   2(h)). On April 1, 2024, Phoenix disseminated the Notice of Class Action Settlement ("Class Notice")

11   via U.S. mail to 389 recipients. (Lee Decl., ¶ 5).

12           The Class Notice that Phoenix mailed informed the Class Members of the Settlement terms;

13   their expected Settlement Award; the deadline to submit objections, requests for exclusion, and

14   workweek disputes; the September 5, 2024 final approval hearing; the names and contact information

15   for Class Counsel and Defendant's Counsel; and that Plaintiff would seek attorneys' fees, costs, and a

16   service award and the corresponding amounts. (Cottrell Final Decl., ¶ 4; Lee Decl., ¶ 2). The Class

17   Notice also reflects the corrections the Court directed Plaintiff to make in its preliminary approval

18   order. (Cottrell Final Decl., ¶ 6; ECF No. 41, p. 6). That is, the Class Notice informed Class Members

19   that they could appear through an attorney and that they must file any objections with the Court but

20   need not send such objections to the parties' counsel. (Cottrell Final Decl., ¶ 6). The Class Notice also

21   listed all of the Class claims in the action and corrected the omission at the bottom of page 3. (*Id.*)

22   Subject to these corrections, the Court approved the Class Notice and proposed notice procedures.

23   (ECF No. 41, p. 9).

24           To provide adequate notice of the fees sought by Class Counsel, Plaintiff filed her Fee Motion

25   on May 17, 2024. (ECF No. 43).

26           On April 2, 2024, Defendant's counsel confirmed via email that the CAFA Notices had been

27   mailed on behalf of Defendant to the appropriate government officials in the states in which Class

28   Members reside, based on the Class List. (Cottrell Final Decl., ¶ 7).

1    As of June 7, 2024, 19 Class Notices have been returned as undeliverable without a forwarding

2    address. Phoenix performed skip-tracing to identify alternative mailing addresses, and all 19 returned

3    Class Notices were successfully remailed. (Lee Decl., ¶ 6). The deadline for Class Members to opt

4    out, object, and dispute their reported workweeks expired on May 31, 2024. (*Id.* at ¶ 8). To date, not a

5    single objection has been filed, no Class Members have disputed their workweeks, and only two Class

6    Members have requested exclusion from the Settlement. (*Id.* at ¶¶ 9-10).

7    In addition to distributing the Class Notice, Phoenix created a website containing key

8    settlement notice documents and information, including Plaintiff's Fee Motion, the Preliminary

9    Approval Motion, the Order granting preliminary approval, the corrected Class Notice, and the

10   Settlement; set up a toll-free telephone number to receive calls from Class Members; responded to

11   inquiries from Class Members; receiving and reviewing for validity completed requests for exclusion;

12   provided the parties with weekly status reports about the delivery of the Class Notices and receipt of

13   completed requests for exclusion; calculated the number of weeks each Class and Member and

14   Aggrieved Employee worked during the Class Release Period and PAGA Release Period, as

15   applicable; and calculated estimated Settlement Awards. Following final approval, Phoenix will be

16   responsible for calculating final Settlement Awards; issuing the checks to effectuate the payments due

17   under the Settlement; sending reminders to Class Members; issuing the tax reports required under the

18   Settlement; and otherwise administering the Settlement pursuant to its terms. (Lee Decl., ¶ 16. Ex. B).

19   **III.    TERMS OF THE SETTLEMENT**

20       **A.    Basic Terms and Value of the Settlement**

21   Defendant has agreed to pay a non-reversionary Gross Settlement Amount of $850,000.00 to

22   settle the case, plus any employer payroll taxes on the portion of Settlement Awards allocated to wages,

23   which shall be separately paid by Defendant. (Settlement, ¶ 2(r)). The parties have agreed that 25% of

24   each Settlement Award will be allocated as wages, and 75% of each Settlement Award will be allocated

25   as penalties and interest. (*Id.* at ¶ 33).

26   The Net Settlement Amount, which is the amount available to pay Settlement Awards to the

27   Class Members, is defined as the portion of the Gross Settlement Amount remaining after deduction

28   of Plaintiff's service award ($10,000.00), Class Counsel's attorneys' fees and costs ($283,333.33 in

1   fees and $10,781.00 in costs), settlement administration costs ($11,950.00), the LWDA PAGA

2   Payment for its 75% share of PAGA penalties ($15,000.00), and the Net PAGA Amount to be

3   distributed to the Aggrieved Employees ($5,000.00). (Settlement, ¶¶ 2(t), (w), (x)). After deducting

4   these figures from the $850,000.00 Gross Settlement Amount, the Net Settlement Amount to be paid

5   to Participating Class Members—*i.e.*, Class Members who do not exclude themselves from the

6   Settlement—is $513,885.67.[3]

7        The Gross Settlement Amount is a negotiated amount that resulted only after arm's-length

8   negotiations following a full-day mediation session with a well-respected mediator and significant

9   investigation and analysis by Plaintiff's counsel. (Cottrell Prelim. Decl., ¶ 34). The damages exposure

10  analysis is based on informal discovery, including payroll and timekeeping data, Defendant's meal and

11  rest break policies, and interviews with Class Members. (*Id.* at ¶¶ 11, 13, 29).

12       The negotiated non-reversionary Gross Settlement Amount of $850,000.00 represents

13  approximately 14.2% of the $6,006,623.00 that Plaintiff calculated for all claims in the Action as of

14  the date of mediation. (Cottrell Prelim. Decl., ¶ 28). This figure reflects a best-case scenario. (*Id.* at ¶

15  33). To obtain such a result at trial, Plaintiff would have to (1) certify all claims and withstand any

16  decertification motions; (2) prove that each Class Member worked off-the-clock during meal and rest

17  breaks and attending unpaid meetings before and after shifts; (3) prove that each Class Member did

18  not receive overtime premium payments required under California law; (4) prevail on the merits on

19  all claims; (5) prove that Defendant acted knowingly or in bad faith; and (6) prove that all Class

20  Members experienced the violations at the levels estimated by Plaintiff based on Defendant's records.

21  (*Id.*).

22       Class Counsel achieved this Settlement through effort and skill in the face of substantial risk.

23  The risk that class certification would not be granted, or that a decertification motion would be granted,

24  was considerable. Though Plaintiff and Class Counsel are confident that they would have obtained

25  certification and defeated any decertification motions, they faced further risk in prosecuting the claims

26

27  [3] The $513,885.67 net Settlement amount is based on the decrease in costs actually sought from
    $12,000 to $10,781.00 in Plaintiff's Motion for Attorneys' Fees and Costs. Because of that difference
28  the total available for award distribution in the settlement administrator's report was $ 512,716.67.
    (Lee Decl., ¶ 12).

1  on the merits, and potentially receiving no recovery if this case proceeded to trial in light of

2  Defendant's financial condition and future ability to pay a judgment. Plaintiff and her counsel

3  considered the significant risks of continued litigation when evaluating the proposed Settlement.

4  (Cottrell Prelim. Decl., ¶ 34). These risks were front and center, particularly given the nature of the

5  off-the-clock work and that the Class Members work in separate facilities throughout California, which

6  could invariably complicate certification efforts and proving the claims on the merits. (*Id.*)

7       In contrast, the Settlement will result in immediate and certain payment to the Class and

8  Collective members of meaningful amounts. (*Id.*). The Settlement yields an average gross recovery of

9  $2,196.38 and an average net recovery of $1,337.45. (See Lee Decl., ¶ 13). The highest Settlement

10  award to be paid is approximately $4,484.94. (Lee Decl., ¶ 13). These amounts provide significant

11  compensation to the Class Members, and the Settlement provides an excellent recovery in the face of

12  expansive and uncertain litigation. (Cottrell Prelim. Decl., ¶ 35). In light of all the risks, the settlement

13  amount is fair, reasonable, and adequate.

14       **B.  Class and Aggrieved Employee Definitions**

15       Plaintiff brought this Class and PAGA action on behalf of herself, the State of California and

16  all current and former hourly, non-exempt employees who worked for Defendant in the state of

17  California any time between February 14, 2019 and December 23, 2023 (the "Class"). (Settlement,

18  ¶ 2(c)). There are 387[4] Participating Class Members. (Lee Decl., ¶ 11).

19       The Aggrieved Employees are defined as all non-exempt employees for Defendant in

20  California between January 29, 2022 and December 23, 2023. (Settlement, ¶ 2(b)).

21       **C.  Allocation and Awards**

22       The Net Settlement Amount to be paid to Participating Class Members is $513,885.67.

23  Participating Class Members will receive a Settlement Award check without the need to submit a claim

24  form. (*See* Settlement, ¶¶ 29, 30). Participating Class Members will be eligible to receive a share of

25  the Net Settlement Amount based on their *pro rata* percentage of workweeks worked in California

26  between February 14, 2019 and December 23, 2023. (*Id.* at ¶ 30(a)(ii)). Likewise, Aggrieved

27

28  [4] Phoenix mailed the Class Notice to 389 individuals, and two individuals submitted valid requests for exclusion. (Lee Decl., ¶ 8).

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
*Rios Lagunas v. Young Adult Institute, Inc.,* Case No. 23-cv-00654-RS

1    Employees will be eligible to receive a share of the Net PAGA Amount based on their *pro rata*

2    percentage of pay periods worked in California between January 29, 2022 December 23, 2023. (*Id.* at

3    ¶ 30(b)(i)).

4         The Settlement Administrator will mail all Settlement Awards and Individual PAGA Payments

5    to Participating Class Members and/or Aggrieved Employees within twenty (20) days after the

6    Effective Date[5] or as soon as reasonably practicable. (Settlement, ¶ 36). Settlement Award checks will

7    remain valid for 180 days from the date of their issuance, and the face of each check will prominently

8    display the date on which the check will be voided. (*Id.* at ¶ 38). The Settlement Administrator will

9    cancel any check not cashed within that time and will promptly send a replacement check to any

10   Participating Class Member whose original check was lost or misplaced, if requested by the

11   Participating Class Member prior to the void date. (Settlement, ¶ 38). Ninety days into the 180-day

12   check-cashing period, the Settlement Administrator will also send a reminder letter (as filed in the

13   record at ECF No. 35-2) via U.S. mail to those who have not yet cashed their Settlement Award or

14   Individual PAGA Payment check. (*Id.*)

15        For any funds that remain from checks that are returned as undeliverable or are not negotiated

16   after the 180-day check cashing period, those monies shall be distributed, subject to the Court's

17   approval, as follows:

18        (a)     If the total residual amount is less than $25,000.00, the amount will revert to *cy pres*.

19   The Parties propose Centro Legal de La Raza which provides free legal representation to the Latino

20   community and other low-income immigrant families. (*Id.* at ¶ 39).

21        (b)     If the total residual amount is $25,000.00 or greater, a second distribution will occur to

22   those Participating Class Members and/or Aggrieved Employees who cashed their Settlement Award

23   check, which will occur on the same *pro rata* basis as the initial distribution. The additional settlement

24   administration costs related to the redistribution will be deducted from the total amount of uncashed

25

---

26   [5] "Effective Date" means (i) if there is an objection to the settlement that is not subsequently
27   withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order;
     or (ii) if there is a timely objection and appeal, then after such appeal is dismissed or the Court's Final
28   Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if
     any objections which were filed are withdrawn before the date of final approval, then the first business
     day after the Court's order granting Final Approval of the Settlement. (Settlement, ¶ 2(m)).

checks prior to the redistribution. If a check to a Participating Class Members and/or Aggrieved Employees is returned to the Settlement Administrator as undeliverable during the second distribution, the Settlement Administrator shall attempt to obtain a valid mailing address by performing a skip trace search and, if another address is identified, shall mail the check to the newly identified address. If none is found, the check will revert to *cy pres*. If there are uncashed check funds remaining from redistribution as described in this Paragraph, then the amount will revert to *cy pres*. (*Id.*)

### D.    Scope of Release

Upon Final Approval by the Court, and subject to the exclusions described below, each Participating Class Member will fully release all claims that were raised in the Action and all claims that could have been brought based on the facts alleged in the Complaints, between February 14, 2019 and December 23, 2023. (Settlement, ¶ 15(a)). Aggrieved Employees will release PAGA claims that were or could have been brought based on the facts alleged in the Complaints or PAGA letter, between January 29, 2022 and December 23, 2023. (*Id.*, at ¶ 15(b)). Plaintiff has also agreed to a general release from all known and unknown claims she may have against the Released Parties[6] through December 23, 2023. (*Id.* at ¶ 17).

## IV.    ARGUMENT

### A.    Class-Action Settlements are Favored in the Ninth Circuit.

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits.") However, a class action may not be settled without Court approval. *See* Fed. R. Civ. P. 23(e). When reviewing a motion for approval of a class-action settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties" and should therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

---

[6] "Released Parties" is defined in the Settlement at ¶ 2(dd).

1    reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

2    625 (9th Cir. 1982).

3         Approval of a class-action settlement requires three steps: (1) preliminary approval of the

4    proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class

5    members; and (3) a final settlement approval hearing at which objecting class members may be heard,

6    and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the

7    settlement is presented. *Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class*

8    *Action Settlement*, § 21.61 (4th ed.). The decision to approve or reject a proposed settlement is

9    committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

10   (9th Cir. 1998).

11        In its March 8, 2024 Order, the Court granted preliminary approval and preliminarily certified

12   the Class for settlement. (ECF No. 41). Defendant does not oppose final certification of the Class for

13   settlement purposes or final approval and enforcement of the Settlement. (*See* Settlement, ¶¶ 11, 19,

14   24). Accordingly, the next step is final approval of the Settlement which will permit the Class Members

15   to receive their allocated award. Final approval of the class and PAGA settlement should be granted

16   for the reasons discussed herein.

17        **B.    The Best Practicable Notice was Provided to the Class Members.**

18        Pursuant to the Court's preliminary approval order, Phoenix sent the Court-approved Class

19   Notice to the Class Members in accordance with the terms of the Settlement. (*See* Lee Decl., ¶ 2).

20   Phoenix sent 389 Class Notices via U.S. Mail, with 19 Class Notices successfully re-mailed as a result

21   of thorough skip tracing efforts. (*Id.* at ¶ 6).

22        Notice of a class-action settlement is adequate where the notice is given in a "form and manner

23   that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable*

24   *Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the

25   circumstances including individual notice to all members who can be identified through reasonable

26   effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual

27   notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v.*

28   *Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45

(S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.")

The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan, and reasonable steps have been taken to ensure that all Class Members received the Class Notice. Of the 389 notices distributed via U.S. Mail, zero remained undeliverable following skip-tracing and other techniques to verify current mailing addresses. (Lee Decl., ¶ 7). The Class Notices provided reasonable estimates of Class Members' recovery, in addition to considerable information about the case and the Settlement. (*Id.* at ¶ 2). Before disseminating the notice to the Class Members, Class Counsel corrected the deficiencies identified by the Court in its preliminary approval order. (Cottrell Final Decl., ¶ 6). Accordingly, the notice process was effective and satisfies the "best practicable notice" standard.

Furthermore, to provide sufficient notice to the Class Members of Plaintiff's Fee Motion, the Fee Motion was filed separately on May 17, 2024, and the Settlement Administrator posted a copy of the Fee Motion on the Settlement website on the same day.

### C.    The Settlement Warrants Final Approval.

In deciding whether to approve a proposed class-action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625; *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Importantly, courts apply a presumption of fairness where, as here, "the settlement is recommended by class counsel after arm's length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is

1    concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors,

2    as discussed below, the Court should find that the Settlement is fair, reasonable, and adequate, and

3    finally approve it as to the Class and Aggrieved Employees.

4        **1.  The Settlement is Entitled to a Presumption of Fairness Because it is the Product**

5             **of Informed, Non-Collusive, Arm's Length Negotiation.**

6        Courts routinely presume a settlement is fair where it is reached through arm's length

7    bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 U.S. Dist. LEXIS 38667 at *20. Here, the

8    Settlement was the product of non-collusive, arm's length negotiations, as the Court has already

9    determined. (ECF No. 41, p. 4; *see also* Cottrell Prelim. Decl., ¶¶ 15, 16). The Settlement was reached

10   after a full-day mediation in September of 2023 with a neutral mediator. (Cottrell Prelim. Decl., ¶ 14).

11       Defendant's financial condition was subjected to scrutiny to validate Defendant's claims of

12   financial hardship. (Cottrell Final Decl., ¶ 8). The parties then spent several months negotiating the

13   Settlement, with several rounds of edits related to its terms and details. (Cottrell Prelim. Decl., ¶ 15).

14   The parties ultimately executed the Settlement on January 18, 2024. (*Id.*)

15       Furthermore, Plaintiff is represented by experienced and respected litigators of representative

16   wage-and-hour actions, and these attorneys feel strongly that based on the specific calculated risks

17   associated with this case, the proposed Settlement achieves an excellent result for the Class Members.

18   (*Id.* at ¶ 45).

19       **2.  The Class Members Support the Settlement.**

20       The Ninth Circuit and other federal courts make clear that the number or percentage of class

21   members who object to or opt out of the settlement is a factor of great significance in determining

22   whether to approve a settlement. *See Mandujano*, 541 F.2d at 837. Courts have found that a relatively

23   low percentage of objectors or opt outs is a very strong indicator of fairness that weighs heavily in

24   favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059–60 (D.S.D. 2000) (approving

25   the settlement in large part because only 3% of the apparent class had objected to the settlement).

26       To date, with the notice period closed, no Class Members have objected to the Settlement and

27   only a tiny fraction of the Class, two Class Members (approximately 0.5%), have opted out. (Lee

28

1  Decl., ¶¶ 8, 9). This indicates widespread support for the Settlement among Class Members and as a

2  factor weighs heavily in favor of final approval.

3  **3.  The Action Involves Significant Risks from Further Litigation.**

4  As the Court noted in its preliminary approval order, "further litigation, class certification, and

5  trial would pose serious risks and require significant expenditures (especially given that this litigation

6  remains in an early stage)." (ECF No. 41, p. 7).

7  Specifically, off-the-clock claims can be difficult to certify for class treatment, given that the

8  nature, cause, and amount of the off-the-clock work may vary based on the individualized

9  circumstances of the worker. *See, e.g., Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-

10  06741-LB, 2020 U.S. Dist. LEXIS 218152, at *15 (N.D. Cal. Nov. 20, 2020) (citing *In re AutoZone,*

11  *Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012)); *Kilbourne v. Coca-*

12  *Cola Co.*, No. 14CV984-MMA BGS, 2015 U.S. Dist. LEXIS 118756, at *45–46 (S.D. Cal. July 29,

13  2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 U.S. Dist. LEXIS 155682, at

14  *83–87 (C.D. Cal. Nov. 23, 2011).

15  Here, Plaintiff acknowledges that the off-the-clock work was performed by employees with

16  different job titles at a number of different facilities throughout California and such a claim could thus

17  prove risky in facing class certification based on the potential need for more individualized inquiry.

18  (Cottrell Prelim. Decl., ¶ 40). Certification of off-the-clock work claims is also complicated by a lack

19  of documentary evidence and reliance on employee testimony. (*Id.* at ¶ 41). Thus, Plaintiff faces the

20  specific risk that the Court could decline to certify a significant portion of the claims at issue, thus

21  reducing or even eliminating any meaningful recovery. (*Id.*)

22  As to Plaintiff's PAGA claims, procedural hurdles, including completing substantial amounts

23  of written discovery and depositions, make an early settlement a more efficient use of recourses where

24  facial violations are already evident, as they are here for on duty meal period violations.[7] Plaintiff

25  would also face fundamental logistical difficulties in determining the violation rate for off-the-clock

26  work due to the lack of documentary evidence. (Cottrell Final Decl., ¶ 10).

27

---

[7] Settlement is also favored in this instance because, based on information provided, the violative
conduct of requiring on-duty meal periods was remedied by Defendant in 2023 to begin paying meal
28  premiums so such violations would no longer be accruing. (Cottrell Final Decl., ¶ 11).

1    The monetary value of the Settlement represents a fair compromise given the risks and

2    uncertainties posed by continued litigation of these claims. (Cottrell Final Decl., ¶ 12). In addition to

3    the general risks associated with continued litigation, as outlined in Plaintiff's Motion for Preliminary

4    Approval, the risk posed by the financial hardship faced by Defendant was substantial and must also

5    be considered, particularly in light of Defendant's potential inability to pay a judgment in the future.

6    Increased fees and costs incurred because of continued litigation, would have likely limited the ability

7    of the Class to collect damages in the future. (*Id.* at ¶ 8)

8    In contrast, resolving this case by means of the proposed Settlement will yield a prompt,

9    certain, and substantial recovery for the Class Members. This result will redirect the expenditure of

10   resources from draining the court system, and Defendant's limited financial recourses, to providing

11   relief to the Class Members. Accordingly, this factor also supports final approval.

12   **4.  The Settlement Amount Favors Final Approval.**

13   In evaluating the fairness of a proposed settlement, courts compare the settlement amount with

14   the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec.*

15   *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction

16   of the maximum potential recovery. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th

17   Cir. 2009) (approving settlement amounting to 10% of total potential damages); *Officers for Justice*,

18   688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759,

19   at *21 (N.D. Cal. Oct. 11, 2016) (approving wage-and-hour settlement representing 8.1% of the total

20   verdict value); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 U.S. Dist.

21   LEXIS 99966, at *17 (N.D. Cal. July 21, 2014) (approving settlement amounting to 5% of the total

22   value of the claims).

23   Here, the Court has already determined that the Gross Settlement Amount of $850,000.00 "falls

24   within the range of what courts in this and other California federal Districts have been willing to

25   accept." (ECF No. 41, p. 7). Likewise, the PAGA allocation of $20,000.00 represents a percentage of

26   the Gross Settlement Amount that is above the threshold required for approval. (*See id*.) Based on

27   Defendant's potential exposure for the core substantive violations on claims with a significant chance

28   of certification, the proposed Settlement represents an impressive 31% of that potential recovery.

(Cottrell Prelim. Decl., ¶ 14). The $850,000.00 Settlement represents 14.2% of the $6,006,623.00 that Plaintiff calculated for Defendant's total exposure for all claims in the Action. (Cottrell Prelim. Decl., ¶ 28). The settlement amount is well within the reasonable standard considering the difficulty and risks presented by pursuing further litigation. (*See* ECF No. 41, p. 7) ("The settlement appears fair given the challenges counsel represent could complicate the class certification process.")

Accordingly, the settlement amount, which represents a significant portion of the maximum estimated recovery and a substantial result in light of the risks of litigation, supports final approval.

### 5.   The Parties Engaged in Informal Pre-Mediation Discovery, Enabling Them to Make Informed Decisions Regarding Settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 U.S. Dist. LEXIS 95401, at *11 (D. Or. June 21, 2017); *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 946 (9th Cir. 2011); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617, 625 (N.D. Cal. 1979). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the parties engaged in informal pre-mediation discovery that has enabled both sides to assess the claims and potential defenses in this action. As discussed at length in Plaintiff's Motion for Preliminary Approval this included extensive review of time and pay records for the Class, handbooks and written policies, Plaintiff's personnel file, and Defendant's financial documents. (Cottrell Prelim. Decl., ¶¶ 11, 36). This allowed the parties to accurately assess the legal and factual landscape posed by the prospect of settlement versus the prospect of continued litigation. (Cottrell Final Decl., ¶ 8). Accordingly, this factor also favors final approval.

### 6.   Class Counsel are Highly Experienced.

Where counsel is well-qualified to represent the class and collective in settlement negotiations, based on their extensive class action experience and familiarity with the strengths and weaknesses of the case, courts find this factor to support a finding of fairness. *Wren*, 2011 U.S. Dist. LEXIS 38667,

13

1   at *31; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 U.S. Dist. LEXIS

2   7793, at *24 (C.D. Cal. Jan. 27, 2010) ("Counsel's opinion is accorded considerable weight."); *Bell*,

3   2017 U.S. Dist. LEXIS 95401 at *11 (considering the experience and views of counsel as one of the

4   factors guiding approval of settlement). Indeed, this Court explained that "[Class] Counsel are highly

5   experienced with wage and hour class actions" and that "their judgment that this settlement represents

6   a positive result for the proposed settlement class is entitled to some deference." (ECF 41, pp. 7–8).

7        In reaching this Settlement, Class Counsel relied on their substantial litigation experience and

8   ability to effectively evaluate the viability of the claims presented, based on an extensive analysis of

9   the effects of Defendant's policies and practices on Class Members' pay. (Cottrell Prelim. Decl., ¶ 37).

10  Class Counsel believe that Plaintiff has achieved a strong settlement that is in the best interest of the

11  Class in light of all the risks and. (*Id.* at ¶ 35, 45). This factor supports final approval.

12       Each of the factors identified above support final approval based on the specific facts and

13  challenges of this case.

14       **D.    The Court Should Finally Certify the Class.**

15       In its March 8, 2024 preliminary approval order, the Court granted conditional certification of

16  the Class, finding that all requirements of Fed. R. Civ. P. 23 (a) and (b) have been satisfied. (ECF No.

17  41, pp. 5, 9). Now that the Class Notice has been disseminated, the Court should finally certify the

18  Class in its Final Approval Order and Judgment. The Class meets all of the requirements for final

19  approval as set forth below.

20       **1.   The Class is Numerous and Ascertainable.**

21       The numerosity requirement demands that a class be large enough that joinder of all members

22  would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have

23  routinely found numerosity satisfied with classes of at least 40 members. *See, e.g., Rannis v. Recchia*,

24  380 F. App'x 646, 648 (9th Cir. 2010); *Doe v. Univ. of Wash.*, 326 F.R.D. 669, 679 (W.D. Wash. 2018).

25  Here, there are 387 Participating Class Members, who have been identified from Defendant's records,

26  easily satisfying numerosity and ascertainability. (Lee Decl., ¶ 11; Cottrell Prelim. Decl., ¶ 20).

27

28

### 2. Plaintiff's Claims Raise Common Issues of Fact or Law.

The commonality requirement of Fed. R. Civ. P. 23(a)(2) only requires a single common question of law or fact. *Garcia v. Stemilt AG Servs. LLC*, No. 2:20-cv-00254-SMJ, 2021 U.S. Dist. LEXIS 158060, at * 35 (E.D. Wash. Aug. 20, 2021); *Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*, 136 F.R.D. 658, 660 (D. Or. 1991) ("It is only necessary that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members.") "Rule 23(a)(2) has been construed permissively." *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 572 (W.D. Wash. 2007) (citing *Hanlon*, 150 F.3d at 1019). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying Rule 23(a)(2) and (b)(3). Defendant has uniform policies applicable to all Class Members. Specifically, Defendant's uniform policies apply to all non-exempt employees, including: Defendant's policy of not paying Class Members overtime premiums for working more than eight hours per day, and of requiring Class Members to attend weekly meetings and perform work while off-the-clock before and after shifts, Defendant's policy of requiring employees to use common time recording devices, Defendant's policy, until December 2022, of requiring Class Members to remain on the clock and continue working during meal periods, and Defendant's alleged policies that still require Plaintiff and Class Members to routinely skip their meal and rest periods, take them late, or cut them short without paying premiums. (Cottrell Prelim. Decl., ¶ 21).

In addition, the alleged wage-and-hour violations create common issues of law that are amenable to resolution on a class-wide basis. These issues include whether Defendant's failure to pay Class Members for time worked over eight hours in a day at the proper overtime rate and failure to pay premium payments at the regular hourly rate for non-compliant meal and rest periods violate California law. (*Id.*) Because these questions can all be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for the Class. (*Id.*)

### 3.     Plaintiff's Claims are Typical of those of the Class.

Rule 23(a)(3) requires Plaintiff to establish that her claims are typical of the claims of the class. *Clarkson v. Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 138838, at *13 (E.D. Wash. Aug. 4, 2020). "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims are typical of those of all other Class Members. Defendant's overtime policies and practices and review of timekeeping and payroll data further confirm that Plaintiff and other Class Members were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. (Cottrell Prelim. Decl., ¶ 22). Thus, the typicality requirement is satisfied.

### 4.     Plaintiff and Class Counsel will Adequately Represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the proposed representative plaintiffs have no conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified and competent counsel." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307 at 327 (D. Or. 2017).

Here, as the Court has already determined, "Plaintiff (and counsel) satisfy the adequacy requirement[, as t]here are no apparent conflicts between the interests of Plaintiff, counsel, and those of the other class members, and Plaintiff and counsel share the other class members' interests in vigorously pursuing this case." (ECF No. 41, p. 5).

### 5.     Rule 23(b)(3)'s Requirements for Class Certification are Met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545. To determine whether the class approach is superior, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy

1   already begun by or against class members; (3) the desirability or undesirability of concentrating the

2   litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

3   Fed. R. Civ. P. 23(b)(3)(A)–(D).

4          Here, the Court found that "[t]he proposed Settlement Class also meets the predominance and

5   superiority requirements in Rule 23(b)." (ECF No. 41, p. 5). As the Court explained, common

6   questions predominate over individual ones. Plaintiff's "class claims, for instance, revolve around

7   [Defendant's] application of its policies to all class members." (*Id.*) The Court also determined that

8   "[t]he class device is a superior vehicle here given the hundreds of employees asserting claims and the

9   limited relief available for each employee." (*Id.*)

10         Accordingly, class treatment is efficient and warranted here, and the Court should finally

11  certify the Class for settlement purposes.

12         **E.     The Settlement Provides a Fair and Reasonable Resolution for the State of**

13                 **California and the Aggrieved Employees.**

14         In light of the risks discussed in this Motion and under an analysis of similar PAGA settlements

15  (*see* ECF No. 35, p. 31), the Settlement's $20,000.00 PAGA allocation constitutes a material

16  percentage of the total damage exposure and is a reasonable overall settlement sum. The Court agreed

17  in its preliminary approval order, noting that Courts do not typically express concern with PAGA

18  allocations, like the one here, that represent over 1% of the Gross Settlement Amount. (ECF No. 41,

19  p. 7).

20         Because PAGA settlements must be viewed in light of PAGA's public purpose[8]—namely,

21  augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions,

22  and deterring noncompliance with California's labor laws—a court's focus is not the amount

23  employees ultimately receive as a result of a settlement, but whether the settlement achieves PAGA's

24  objectives, even if it represents only a portion of an employer's total exposure. Compare *Haralson v.*

25  *U.S. Aviation Servs. Corp.,* 383 F.Supp.3d 959, 972-73 (N.D. Cal. 2019) (expressing concern only for

---

[8] *See, e.g., Ramirez v. Benito Valley Farms, LLC,* Case No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25, 2017); *see also Jordan v. NCI Grp., Inc.,* EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297 at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.").

1   settlements that represent less than 1% of the total value of a PAGA claim). The PAGA allocation here

2   of $20,000.00 represents 2.4% of the Gross Settlement Amount, which is well within the range of

3   PAGA settlements previously approved in this district.[9]

4        Accordingly, the PAGA component of the Settlement is fair and reasonable and should be

5   approved.

6        **F.    The Attorneys' Fees and Costs and Service Award are Reasonable.**

7        As part of evaluating the Settlement, the Court must evaluate Plaintiff's request for attorneys'

8   fees and costs and for a service award pursuant to the terms of the Settlement. In Plaintiff's Fee Motion,

9   filed on May 17, 2024, Class Counsel requests attorneys' fees of one-third of the Gross Settlement

10  Amount, plus reimbursement of costs in the amount of $10,781.00, as well as a service award of

11  $10,000.00. (ECF No. 43). Defendant does not oppose these requests and no Class Member has

12  objected to either the requested fees and costs, or the service award.

13       Plaintiff sets forth the arguments in support of the requested attorneys' fees and costs and

14  service award in full in the Fee Motion and does not repeat those arguments here. For the reasons set

15  forth in that motion, the Court should grant final approval of the requested fees and costs.

16       **G.    The Court Should Approve the Proposed Schedule.**

17       Lastly, Plaintiff respectfully requests that the Court approve the following implementation

18  schedule, in accordance with the Settlement.

| Event | Deadline |
|---|---|
| Final Approval Hearing (Settlement, ¶ 23). | September 5, 2024. |
| Effective Date (Settlement, ¶ 2(m)). | (i) If there is an objection to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection and appeal, then after such appeal is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are |

---

[9] *Moreno v. Capital Bldg. Maint. & Cleaning Servs.,* No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268, at *25 n.3 (N.D. Cal. May 5, 2021) (noting the PAGA portion of a proposed settlement representing 2.4% of total exposure under the PAGA exceeded the 1% benchmark "and therefore does not invoke the additional concerns examined in *Haralson*").

| Event | Deadline |
|---|---|
|  | withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement. |
| Deadline for Defendant to deposit Gross Settlement Amount (Settlement, ¶ 25). | Within ten (10) days of Effective Date. |
| Deadline for Administrator to make all payments due under the Settlement (Settlement, ¶¶ 26, 36). | Within twenty (20) days after the Effective Date or as soon as reasonably practicable. |
| Check-cashing deadline (Settlement, ¶¶ 18(c), 39). | 180 days from mailing. |
| Deadline for Administrator to send reminder letters to those who have not negotiated their checks (Settlement, ¶ 38). | 90 days before check-cashing deadline. |
| Deadline for Administrator to provide Defendant's Counsel and Class Counsel, respectively, a report regarding the total amount of any funds that remain from checks that are returned as undeliverable or are not negotiated (Settlement, ¶¶ 18(k), 24). | Within ten (10) business days after conclusion of the 180-day check-cashing period. |
| Deadline to distribute remaining monies to *cy pres* beneficiary (Settlement, ¶ 39). | At the conclusion of the 180-day check-cashing period. |
| Deadline for Administrator to file post-distribution accounting (Settlement, ¶ 18(c)). | Within twenty-one (21) days after distribution of any remaining monies to Participating Class Members, Aggrieved Employees, and/or the *cy pres* beneficiary. |
| Deadline for Administrator to provide written certification of completion of settlement administration (Settlement, ¶ 18(k)). | Upon completion of administration of the Settlement. |

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Settlement, in accordance with the schedule above.

Date: August 15, 2024                    Respectfully Submitted,

                                         */s/ Carolyn H. Cottrell*
                                         Carolyn Hunt Cottrell

Ori Edelstein
Laurel N. Holmes
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**

*Attorneys for Plaintiff, the State of California on behalf*
*of Aggrieved Employees, and the Putative Class*

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
*Rios Lagunas v. Young Adult Institute, Inc.*, Case No. 23-cv-00654-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of California, by using the Court's CM/ECF system on August 15, 2024. Service will be accomplished on all parties by the Court's CM/ECF system.

        */s/ Carolyn H. Cottrell*
        Carolyn H. Cottrell